Willard Shih, Esq. (WS8578)
WILENTZ, GOLDMAN & SPITZER P.A.
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey  07095
(732) 636-8000
Attorneys for Plaintiff Capelogic, Inc.

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------X
:
CAPELOGIC, INC.,                                      :
:
       Plaintiff,                                 :   Case No. 3:22-CV-00085-ZNQ-DEA
:
v.                                                    :
:   **FIRST AMENDED COMPLAINT**
MARKIT GROUP LIMITED,                                 :
:
       Defendant.                                 :
:
:
------------------------------------------------------X

Plaintiff Capelogic, Inc., as and for its First Amended Complaint against Defendant Markit Group Limited a/k/a IHS Markit, states and alleges as follows:

## THE PARTIES

1. Plaintiff Capelogic, Inc. ("Capelogic") is a New Jersey corporation with a principal place of business located at 981 State Route 33 West, Monroe Township, New Jersey 08831.  It is the successor in interest to Fintech Services, Inc. ("Fintech").

2. Upon information and belief, Defendant Markit Group Limited ("Markit"is a foreign corporation with its principal place of business located 4th Floor, Ropemaker Place, 25 Ropemaker Street, London EC2Y 9LY, United Kingdom.

## FACTS COMMON TO ALL COUNTS

3. Fintech owned proprietary Fixed Income Pricing model and calculation algorithms and associated software, used to price municipal bonds (the "Pricing Model").

4. The Pricing Model is confidential.

5. Fintech is the sole owner of the Pricing Model and has the sole right to grant a license to use the model.

6. On or before July 30, 2010, Markit desired to engage Fintech to perform data processing and other services so that Markit could host a municipal bond pricing model.

7. Fintech agreed to provide services to Markit, consisting of the Pricing Model, certain application services and maintenance services.

8. Markit proposed to engage in the business of providing pricing information with respect to municipal fixed income securities to end users utilizing Fintech's Pricing Model, and Fintech agreed to provide those services.

9. As a result, Fintech and Markit entered into a Software License, Maintenance and Service Provider Agreement effective July 30, 2010 (the "Agreement").

10. Pursuant to Section 2 of the Agreement, Fintech gave Markit a license to use its Pricing Model.

11. Paragraph 2.5 sets for the "Use Restrictions – Markit" and states "… Markit will not… (a) modify, copy, or otherwise reproduce the Pricing Model in whole or in part; (b) reverse engineer, decompile, disassemble, or otherwise attempt to derive the source code of the Pricing Model; (c) create an adaptation and/or derivative work of the Pricing Model, [or] (d) … sell… the Pricing Model…."

12. Markit recognized that "[e]xcept for the right and license granted herein, title to the Services as delivered by Fintech shall remain vested in Fintech." "Services" includes use of the Pricing Model.

13. Effective June 12, 2015, Capelogic and Markit entered into Amendment #2 of the agreement.

14. Among other reasons, the parties entered into Amendment #2 to recognize Capelogic as Fintech's successor in interest. To accomplish this goal, Amendment #2 states "[a]ll references to 'FINTECH' in the Agreement shall be changed to 'Capelogic.'"

15. Amendment #2 states that the Agreement, as amended, shall remain in full force and effect through June 12, 2019, and shall automatically renew itself for successive one year periods.

16. The Agreement, as amended, terminated June 12, 2021.

17. Markit's limited license to use the Pricing Model ceased when Markit terminated the Agreement.

18. After Markit terminated the Agreement, Capelogic learned Markit continued to use a derivative/adaptation of the Pricing Model in breach of its obligations under Paragraph 2.5.

19. On August 9, 2021, Capelogic served Markit with a letter demanding it cease and desist from using the Pricing Model

20. On September 8, 2021, Markit responded to Capelogic's letter claiming it was no longer using the Pricing Model.

21. In its denial, Markit states it "has extensive capabilities and experience in pricing bonds. IHS Markit's proprietary pricing methodology have [sic] been used in our other

bond pricing services since 2008, which is years before we entered into the Agreement with Capelogic or began using Capelogic's Pricing Model. We developed the Muni Bond Pricing Service using a similar methodology… and the same bond analytics library, as we used in our long-standing corporate bonds pricing service."

22. The statements contained in Markit's denial letter are false.

23. Contrary to Markit's allegations, a "similar methodology" that it uses for its "long-standing corporate bonds pricing service" cannot be used to price municipal fixed income securities.

24. Contrary to Markit's allegations, it deconstructed the Pricing Model so that it could price municipal fixed income securities.

25. Contrary to Markit's allegations, Markit deconstructed the Pricing Model so that it can continue to price municipal fixed income securities after termination of the Agreement and to avoid paying license fees to Capelogic.

## FIRST COUNT

### (Breach of Contract)

26. Capelogic repeats and realleges each of the paragraphs above as if set forth at length herein.

27. Capelogic and Markit are parties to the Agreement, as amended.

28. Capelogic gave Markit a limited license to use its Pricing Model to price municipal fixed income securities.

29. Markit's limited license to use the Pricing Model was subject to the Use Restrictions set forth in Section 2.5 of the Agreement.

30. Markit's limited license to use the Pricing Model prohibits it from deconstructing (reverse engineering) the Pricing Model.

31. Markit is in breach of the Use Restrictions as it deconstructed the Pricing Model so that it can continue to price municipal fixed income securities after termination of the Agreement to avoid paying a license fee to Capelogic.

32. Capelogic has been damaged by Markit's breach, and it seeks an injunction to prohibit Markit from using the derivative/adaptation of the Pricing Model in any way.

WHEREFORE, Capelogic demands judgment for the following relief against Markit:

a. A permanent injunction to prevent Markit from modifying, copying, or otherwise reproducing the Pricing Model in whole or in part;

b. A permanent injunction to prevent Markit from reverse engineering, decompiling, disassembling, or otherwise attempting to derive the source code of the Pricing Model;

c. A permanent injunction to prevent Markit from creating an adaptation and/or derivative work of the Pricing Model;

d. A permanent injunction to prevent Markit from selling Municipal bond evaluations that are derived using Capelogic's intellectual property;

e. Compensatory damages;

f. Pre and post judgment interest;

g. Reasonable attorney fees and costs of litigation; and

h. Such other relief as the Court may deem just and equitable.

## SECOND COUNT

### (Breach of Implied Covenant Of Good Faith and Fair Dealing)

33. Capelogic repeats and realleges each of the paragraphs above as if set forth at length herein.

34. Capelogic and Markit are parties to the Agreement, as amended.

35. An implied covenant of good faith and fair dealing is inherent in the agreement by and between the parties that required Markit not do anything to destroy or injure Capelogic's right to receive the benefits of the Agreement.

36. By its conduct as detailed above, Markit has breached the implied covenant of good faith and fair dealing contained in the Agreement.

37. As a consequence of Markit's breach, Capelogic has suffered damages.

WHEREFORE, Capelogic demands judgment for the following relief against Markit:

    a. A permanent injunction to prevent Markit from modifying, copying, or otherwise reproducing the Pricing Model in whole or in part;

    b. A permanent injunction to prevent Markit from reverse engineering, decompiling, disassembling, or otherwise attempting to derive the source code of the Pricing Model;

    c. A permanent injunction to prevent Markit from creating an adaptation and/or derivative work of the Pricing Model;

    d. A permanent injunction to prevent Markit from selling Municipal bond evaluations that are derived using Capelogic's intellectual property;

    e. Compensatory damages;

    f. Interest from when due;

g. Reasonable attorney fees and costs of litigation; and

h. Such other relief as the Court may deem just and equitable.

### THIRD COUNT

### (Unjust Enrichment)

38. Capelogic repeats and realleges each of the paragraphs above as if set forth at length herein.

39. Markit deconstructed the Pricing Model.

40. By receiving payment for pricing municipal bonds after deconstructing the Pricing Model, Markit has been unjust enriched.

41. As a direct and proximate result of the Markit's unjust enrichment, Capelogic has suffered and continues to suffer irreparable harm and damages.

WHEREFORE, Capelogic demands judgment for the following relief against Markit:

a. A permanent injunction to prevent Markit from modifying, copying, or otherwise reproducing the Pricing Model in whole or in part;

b. A permanent injunction to prevent Markit from reverse engineering, decompiling, disassembling, or otherwise attempting to derive the source code of the Pricing Model;

c. A permanent injunction to prevent Markit from creating an adaptation and/or derivative work of the Pricing Model;

d. A permanent injunction to prevent Markit from selling Municipal bond evaluations that are derived using Capelogic's intellectual property;

e. Compensatory damages;

f. Interest from when due;

g.  Reasonable attorney fees and costs of litigation; and

h.  Such other relief as the Court may deem just and equitable.

WILENTZ, GOLDMAN & SPITZER  
A Professional Corporation

By:_____  
Willard C. Shih

Dated: March 30, 2022